**No. 24-3830**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**SECURITIES AND EXCHANGE COMMISSION**,

Plaintiff-Appellee,

v.

**ONGKARUCK SRIPETCH,**

Defendant-Appellant,

and

**AMANDA FLORES, BREHNEN KNIGHT, ANDREW MCALPINE, ASHMIT PATEL, MICHAEL WEXLER, DOMINIC WILLIAMS, ADTRON INC. a/k/a STOCKPALOOZA.COM, ATG INC., DOIT, LTD, DOJI CAPITAL, INC., KING MUTUAL SOLUTIONS INC., OPTIMUS PRIME FINANCIAL INC., ORCA BRIDGE, REDLINE INTERNATIONAL, and UAIM CORPORATION,**

Defendants.

_____

On Appeal from the United States District Court
for the Central District of California
No. 20-cv-01864-H-DTF

_____

**APPELLANT'S OPENING BRIEF**

_____

KENNETH P. WHITE
GREGORY T. NOLAN
TYLER C. CREEKMORE
Brown White & Osborn LLP
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
(213) 406-2949
Attorney for Defendant-Appellant

## **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION..................................................................5

STATEMENT OF ISSUE PRESENTED...........................................................5

STATEMENT WITH RESPECT TO ORAL ARGUMENT ................................6

STATEMENT OF THE CASE........................................................................6

      A.    Procedural History..................................................................6

      B.    Relevant Facts .......................................................................7

SUMMARY OF ARGUMENT .....................................................................10

ARGUMENT .............................................................................................10

I.      STANDARD OF REVIEW..................................................................10

II.     GENERAL LEGAL STANDARD FOR DISGORGEMJENT ...................11

III    ATHE DISTRICT COURT COMMITTED A LEGAL ERROR ORDERING DISGORGEMENT BECAUSE THERE WAS NO EVIDENCE THAT VICTIMS SUFFERE4D *FINANCIAL* HARM.............12

      A.    *Liu v. SEC*...........................................................................14

      B.    The National Defense Authorization Act...............................15

      C.    Circuit Split on the NDAA's Effect on *Liu*...........................16

      D.    The Ninth Circuit Should Follow the Second Circuit's Approach and Require the SEC to Show the Investors were Harmed and Disgorged Funds Will be for the Benefit of Aggrieved Investors .................................................................18

      E.    The SEC Is Required To Prove Investors Were *Financially* Harmed, Which It Did Not Do Here ......................................21

III.    CONCLUSION.................................................................................22

CERTIFICATE OF COMPLIANCE................................................................24

CERTIFICATE OF RELATED CASES ..........................................................25

CERTIFICATE OF SERVICE .......................................................................26

# TABLE OF AUTHORITIES

Page

**Cases**

*Cf. Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ...............................................................................12

*Cont'l Grain (Australia) Pty. Ltd. v. Pac. Oilseeds, Inc.*,
  592 F.2d 409 (8th Cir. 1979) .................................................................18

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ...............................................................................10

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ...............................................................................16

*Kokesh v. SEC*,
  581 U.S. 455 (2017) ................................................................ 13, 18, 20

*Liu v. SEC*,
  591 U.S. 71 (2020) ....................................................................... *passim*

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ...............................................................................17

*SEC v. Ahmed*,
  72 F.4th 379 (2d Cir. 2023) ..................................................... 15, 16, 20

*SEC v. Cole*,
  No. 17-56196, 2024 WL 445335 (9th Cir. Feb. 6, 2024).......................17

*SEC v. First Pac. Bancorp*,
  142 F.3d 1186 (9th Cir. 1998).................................................................10

*SEC v. Govil*,
  86 F.4th 89 (2d Cir. 2023) ........................................................ 11, 12, 21

*SEC v. Hallam*,
  42 F.4th 316 (5th Cir. 2022)........................................................ 15, 18

*SEC v. iFresh, Inc.*,
  No. 22CV3200ARRSJB, 2024 WL 416709 (E.D.N.Y. Feb. 5, 2024).................12

3

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*SEC v. Kasser,*
   548 F.2d 109 (3d Cir. 1977) ................................................................18

*SEC v. Platforms Wireless Int'l Corp.,*
   617 F.3d 1072 (9th Cir. 2010) ........................................................ 9, 10

*SEC v. World Cap. Mkt., Inc.,*
   864 F.3d 996 (9th Cir. 2017) ..............................................................10


**Statutes**

15 U.S.C. § 77t(b) ...............................................................................11

15 U.S.C. § 78u........................................................................... 15, 21

15 U.S.C. § 78u(d)(1)...........................................................................11

15 U.S.C. § 78u(d)(3)...........................................................................15

15 U.S.C. § 78u(d)(5)................................................................... *passim*

15 U.S.C. § 78u(d)(7)................................................................... *passim*

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of California ("the District Court") had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. The district court entered a final judgment as to Defendant-Appellant Ongkaruck Sripetch on April 17, 2024, ordering disgorgement against him pursuant to its partial granting of Plaintiff-Appellee Securities and Exchange Commission's motion for remedies. (ER-27-48.) The District Court's judgment is final under Federal Rule of Civil Procedure 54, as it specifically found that there is "no just reason for delay" in entering a final judgment. (*Id.* at 35:6-8).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Mr. Sripetch appeals this District Court's order of disgorgement. (*Id.* at 224-234.) He filed his Notice of Appeal on June 13, 2024. (*Id.*) The appeal is, therefore, timely under 21 U.S.C. §2107(b) and Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF ISSUE PRESENTED

In *Liu v. SEC*, the Supreme Court held that SEC disgorgement actions are subject to traditional equitable constraints, including that "the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." 591 U.S. 71, 80 (2020). Although Mr. Sripetch stipulated that his securities-related malfeasance caused harm generally, the SEC made no showing of financial harm specifically, much less attempt to quantify such harm to aggrieved investors. But

5

the District Court ordered Mr. Sripetch to pay more than $2 million in disgorgement anyway. Did it err?

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Mr. Sripetch requests oral argument and notes that this appeal implicates a split between the Second Circuit, which favors Mr. Sripetch's position, and Fifth Circuit.

## STATEMENT OF THE CASE

**A.    Procedural History**

In 2020, the SEC filed a complaint alleging that Mr. Sripetch and others committed various securities law violations. (ER-181-223.) The District Court then stayed proceedings during the pendency of a related federal criminal action against Mr. Sripetch. (*Id.* at 174:13-24.) Mr. Sripetch pled guilty to and was convicted of a single count of offer of sale of unregistered securities in violation of 15 U.S.C. § 77(e)(1) and (x). (*Id.* at 176-80.)[1] Mr. Sripetch's sentence did not include a fine or order to pay restitution. (*See id.*) After sentencing, the District Court lifted the stay on this civil case. (*Id.* at 174:13-24.)

With leave of court, the SEC filed the Amended Complaint in August 2023, which again alleged various securities law violations. (*Id.* at 123-72.) Later that

---

[1] This document is from Mr. Sripetch's criminal case in the Southern District of California: *United States v. Sripetch, et al.*, No. 3:20-cr-160-H. In the index for the Excerpts of Record, documents from the criminal case are noted in the "Title of Document" column with "(Criminal Case)."

year, the District Court granted the SEC's consent motion for a bifurcated consent judgment against Mr. Sripetch, reached with the cooperation of Mr. Sripetch and his counsel. (*Id.* at 109-22.) Mr. Sripetch agreed to consent to the judgment but maintained the right to contest the amount of penalties and disgorgement sought. (*Id.* at 116-17 ¶ 3).[2] He also agreed not to contest the factual allegations in the Amended Complaint. (*Id.* at 118-19 ¶ 10.) The District Court subsequently issued a bifurcated consent judgment and resolved the issue of liability and injunctive relief, but it left the issues of civil penalties and disgorgement to be resolved later. (*Id.* at 109-10.)

In December 2023, the SEC filed a motion for remedies seeking disgorgement from Mr. Sripetch. (*Id.* at 81-96.) Mr. Sripetch opposed, and the SEC filed a reply brief. (*Id.* at 49-75.) The District Court granted the SEC's motion for remedies in part and ordered disgorgement against Mr. Sripetch, plus pre-judgment interest. (*Id.* at 31:17-24, 48:11-17.)

## B. Relevant Facts

The District Court's disgorgement order relied on the factual allegations of the Amended Complaint, to which Mr. Sripetch stipulated. (*Id.* at 39:4-7.) Essentially, Mr. Sripetch admitted to three relevant schemes involving penny stocks.

---

[2] There are two paragraphs numbered "3" in this document. This cite refers to the second.

The first involved promoting stocks that he and his coconspirators owned without disclosing their stake in the stocks, and then selling their stake when the stock's value rose. (*Id.* at 39:10-40:11, 131-35 ¶¶ 31-39.) The second related to Mr. Sriptech and coconspirators being issued large numbers of shares in a company, not waiting the required amount of time to hold onto them, and then reselling the shares without a proper registrations statement. (*Id.* at 40:12-22, 147-50 ¶¶ 100-12.) The third concerned Mr. Sripetch and coconpirators (1) deceptively engaging in a series of trades with each other to make it appear that trading for stocks were more active than they actually were, (2) promoting these stocks without declaring their ownership stake, and (3) subsequently selling the stock at an elevated rate. (*Id.* at 40:24-42:4, 150-56 ¶¶ 113-31.)

For each of these schemes, the SEC presented no evidence that Mr. Sripetch's actions caused the relevant stock price to go down or that investors otherwise lost money. (*See id.* at 39:10-42:4, 131-135 ¶¶ 31-39, 147-56 ¶¶ 100-31.) The only time harm is discussed in the Amended Complaint is in the following merely conclusory reference: "The Defendants obtained at least $6 million in illicit sale proceeds from this illegal conduct, while harming retail investors who purchased shares during the schemes." (*Id.* at 182 ¶ 1.) The SEC never alleged the harm to be financial in nature and never calculated a pecuniary loss amount; no

8

victims have been identified, and no harm was specifically attributed to Mr. Sripetch, only the defendants collectively. (*See id.*)

In its motion for remedies, the SEC argued *Liu* did not disturb the rule that a "a reasonable approximation of profits causally connected to the violation" is the only thing which is needed to obtain a disgorgement award. (*See id.* at 9:21-22.) Mr. Sripetch argued most relevantly that financial harm must be proved and pointed out that the SEC had not shown financial harm, much less event attempted to quantify that harm. (*Id.* at 65:18-73:13.) In making, this argument, Mr. Sripetch highlighted a circuit split between the Second and Fifth Circuit as to whether a post-*Liu* statute, the National Defense Authorization Act, effectively turned disgorgement in SEC actions into a legal remedy (as opposed to an equitable one) where financial harm need not be shown. (*See id.*) Mr. Sripetch argued in favor of the Second Circuit's approach, which requires proof of such harm. (*See id.*) The District Court found that because the SEC had shown investor financial harm, based on the above-noted facts, it did not need to resolve this split, which is one that the Ninth Circuit has yet to address. (*Id.* at 44:15-45:9.)[3] Though no evidence

---

[3] In its reply brief to the District Court, the SEC noted that there were victim impact statements and filings regarding financial losses for some of Mr. Sripetch's codefendants. (*Id.* at 55:3-14). As counsel for Mr. Sripetch argued at the hearing on the motion for remedies, Mr. Sripetch does not have access to the documents filed in the criminal case for other defendants that show this putative loss, so these documents should not be used to determine disgorgement against Mr. Sripetch. (*See id.* at 15:2-11.) Moreover, the only document that is available is a declaration

was ever presented regarding a dollar amount that any victim suffered, the District Court awarded $2,251,923.16 in disgorgement against Mr. Sripetch, plus pre-judgment interest. (*Id.* at 31:17-24, 48:11-17.)

## SUMMARY OF ARGUMENT

Disgorgement, as an equitable remedy, requires proof that investors suffered financial harm. While the SEC here has evidence that investors were duped and tricked in Mr. Sripetch's scheme, that conventional sense of harm is not what the law recognizes as that which disgorgement can address. Rather disgorgement may *only* remedy financial harm (*i.e.*, pecuniary losses). Because the district court presumed such harm without proof of it, the District Court legally erred.

## ARGUMENT

## I.      STANDARD OF REVIEW

Awarding disgorgement is reviewed for abuse of discretion.  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010). Basing a

---

from a government agent that provides a loss amount of $89,340 (roughly four percent of Mr. Sriptech's ordered disgorgement before interest), and no documents for verifying that figure are available to Mr. Sripetch's counsel. (*See id.* at 15:2-11, 76-80). Additionally, at the hearing on the motions for remedies, the SEC expressly disclaimed seeking an award based on joint and several liability. (*Id.* at 12:21-22.) Presumably for these reasons, the unverified loss amounts from other criminal codefendants' sentencings rightly appears not to have figured into the District Court's disgorgement decision. (*See generally id.* at 36-48.)

disgorgement order "on an erroneous view of the law" is an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## II.      GENERAL LEGAL STANDARD FOR DISGORGEMENT

"The SEC is authorized by both the Securities Act of 1933 and the Securities Exchange Act of 1934 to bring civil enforcement actions seeking equitable relief in the form of injunctions against those committing violations of the Acts." *SEC v. World Cap. Mkt., Inc.*, 864 F.3d 996, 1003 (9th Cir. 2017) (citing 15 U.S.C. §§ 77t(b), 78u(d)(1)). "In such actions, federal courts may grant 'any equitable relief that may be appropriate or necessary for the benefit of investors,' including disgorgement of the gains obtained from securities law violations." *Id.* (quoting 15 U.S.C. § 78u(d)(5)); *see also SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) ("'[A] district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws.'" (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)). Furthermore, a district court may order disgorgement in an amount that "does not exceed a wrongdoer's net profits *and is awarded for victims*." *Liu*, 591 U.S. at 74 (emphasis added). In disgorgement, "the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Id.* at 80.

11

### III. THE DISTRICT COURT COMMITTED A LEGAL ERROR ORDERING DISGORGEMENT BECAUSE THERE WAS NO EVIDENCE THAT VICTIMS SUFFERED *FINANCIAL* HARM

The District Court determined that investors were harmed based on cites to the Amended Complaint. (*See* ER-44:18-19 (citing paragraphs 1, 32-33, 36-38, 42, 59, 68, 98, 117-30 of the Amended Complaint.) However, none of the cited portions of the Amended Complaint address pecuniary losses. Paragraph 1 merely states: "The Defendants obtained at least $6 million in illicit sale proceeds from this illegal conduct, while harming retail investors who purchased shares during the schemes." (*Id.* at 123-68) And the remaining paragraphs only detail the nature of Mr. Sripetch's scheme and his gains, not the pecuniary losses any victims suffered. There is no specific allegation in the Amended Complaint or the SEC's Motion for Remedies showing investors suffered specific pecuniary harm, let alone identifying those investors.

Mr. Sripetch does not dispute that investors suffered some types of colloquial harm because of his schemes. They, for instance, invested with inaccurate information available to them in part because of Mr. Sripetch's actions. But the SEC has not offered any evidence whatsoever that any investors suffered *financial* harm because of his actions. *See SEC v. Govil*, 86 F.4th 89, 104 (2d Cir. 2023) (explaining that under a general dictionary definition victims suffer harm

12

when they are "tricked" or "duped," but explaining that is not the type of harm that disgorgement can address, only pecuniary harm is).

The District Court cited another district court opinion for the proposition that artificially inflated stock prices harm those that bought the stock when the price was inflated. (ER-44:19-45:3 (citing *SEC v. iFresh, Inc.*, No. 22CV3200ARRSJB, 2024 WL 416709, at *3 (E.D.N.Y. Feb. 5, 2024) "("The SEC's allegation that iFresh's stock prices were artificially inflated during the relevant time period, taken as true, also establishes the requisite pecuniary harm to those who purchased iFresh stock during that time period").) But financial harm would only follow if investors would have bought at the same time, regardless of Mr. Sriptech's schemes, and if they thereafter suffered losses in the value of the stock because of this scheme.[4] Stocks are not like buying a new car that depreciates after you buy it: what matters from a loss perspective is not what one buys the stock at, but what one can sell it for after having bought it. *Cf. Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (noting that in fraud-on-the-market cases, "an inflated

---

[4] The *iFresh* decision cites *Govil* as supporting its holding. But it seems to misread *Govil*. Nothing in that case indicates that a court may presume pecuniary harm, as *iFresh* did in finding harm simply because others bought at a time when a stock was inflated. As *Govil* explains: "The district court may have presumed that the investors suffered economic harm . . . But whether the investors actually suffered pecuniary harm would depend on the type of securities held, the terms of those securities, and when those securities were sold." 86 F. 4th at 104 n.16.

purchase price will not itself constitute or proximately cause the relevant economic loss"). The SEC presented the District Court with no proof on these issues.

Thus, the SEC did not prove pecuniary loss. If such loss is required— and it should be under the most persuasive authority, as is set forth below— the district court's order must be overturned. Resolution of this question requires examination of *Liu v. SEC*, 591 U.S. 71 (2020), legislation passed after *Liu*, and a Circuit split regarding the impact of that legislation that the Ninth Circuit has yet to address.

### A. Liu v. SEC

Two years before *Liu*, the Supreme Court left open the question of whether disgorgement was available to the SEC under 15 U.S.C. § 78u(d)(5). *Kokesh v. SEC*, 581 U.S. 455, 461 n.3 (2017). That subsection states: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary *for the benefit of investors*." 15 U.S.C. § 78u(d)(5) (emphasis added). In *Liu*, the Supreme Court answered the question, holding "that a disgorgement award that does not exceed a wrongdoer's net profits and *is awarded for victims* is equitable relief permissible under § 78u(d)(5)." 591 U.S. at 74 (emphasis added).

14

In reaching this ruling, *Liu* emphasized two separate, traditional principles in equity: (1) the wrongdoer should not profit, and (2) "the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Id.* at 1944 (internal quotation marks and alterations omitted). While these principles are incorporated into § 78u(d)(5)'s language, the Supreme Court noted that before *Liu*, courts often applied the statute to award disgorgement in ways "that test the bounds of equity practice," including "by ordering the proceeds of fraud to be deposited in Treasury funds instead of disbursing them to victims . . . and declining to deduct even legitimate expenses from the receipts of fraud." *Id.* at 85.

### B. The National Defense Authorization Act

Several months after *Liu*, Congress passed the National Defense Authorization Act ("NDAA"). The NDAA made changes to SEC enforcement actions, most notably for purposes of this case is adding subsection (d)(7) to 15 U.S.C. § 78u, which states: "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." 15 U.S.C. § 78u(d)(7). The NDAA's changes to SEC enforcement actions apply to cases pending at the time the changes went into effect, such as this case. 15 U.S.C. § 78u(d)(3).

15

### C. Circuit Split on the NDAA's Effect on *Liu*

The Fifth Circuit was the first to relevantly address the impact of the NDAA on the SEC's disgorgement powers. In *SEC v. Hallam*, the Fifth Circuit held that section 78u(d)(7) "authorizes disgorgement in a legal—not equitable—sense," allowing disgorgement to escape the equitable principles recognized in *Liu* and to permit the types of practices that *Liu* criticized, *i.e.*, funds need not be for the benefit of making investors whole. *SEC v. Hallam*, 42 F.4th 316, 338 (5th Cir. 2022). Part of *Hallam*'s reasoning focused on its interpreting subsection (d)(7) in light of subsection (d) as a whole. *Id.* at 339. In doing so, though, the Fifth Circuit conceded that "there is a potentially countervailing textual implication" to its interpretation. *Id.* at 340. The remainder of the Fifth Circuit's analysis concerned its framing of the NDAA as being a response to *Liu. Id.* at 339–41 (arguing the fact the NDAA was passed only six months after *Liu* suggests that it repudiates *Liu* and affirmed the disgorgement practices that *Liu* criticized.) As discussed below, however, the relevant language of the NDAA was written before *Liu*. Thus, viewing that language as a response to *Liu* is a mistake.

The Second Circuit took a different and more persuasive approach to disgorgement when it analyzed and rejected *Hallam's* rationale in *SEC v. Ahmed*, 72 F.4th 379, 395–96, 395 n. 7 (2d Cir. 2023). First, the Second Circuit in *Ahmed* relied on Supreme Court statutory interpretation authority to explain that

16

"disgorgement" is traditionally considered an equitable remedy and "statutory reference to a remedy grounded in equity must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes." *Ahmed*, 72 F.4th at 396 (internal quotation marks and alterations omitted) (quoting *Liu*, 591 U.S. at 87, which itself was quoting other authority).

Second, "[t]he NDAA's text evinces no intent to contradict *Liu* or to strip disgorgement of 'limit[s] established by longstanding principles of equity.'" *Ahmed*, 72 F.4th a 396 (quoting *Liu*, 591 U.S. at 87). Inferring such an intent would be a mistake, the Second Circuit reasoned, given "the strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Ahmed*, 72 F.4th at 396 (quoting a Second Circuit case, which was quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)).

Third, "reading 'disgorgement' under § 78u(d)(7) as equitable disgorgement is consistent with the statutory history." *Ahmed*, 72 F.4th at 396. The Second Circuit emphasized that before *Liu* it was unclear whether the SEC could obtain disgorgement under section 78u(d)(5), so the Circuit reasoned the addition of subsection (d)(7) should simply be understood "as a 'belt and suspenders' clarification that equitable disgorgement is available under the Exchange Act." *Id.*

17

**D. The Ninth Circuit Should Follow the Second Circuit's Approach and Require the SEC to Show that Investors were Harmed and Disgorged Funds Will be for the Benefit of Aggrieved Investors.**

The Second Circuit's interpretation of *Liu* and the NDAA is the correct interpretation: the SEC is entitled only to equitable disgorgement to make financially harmed investors whole. While the Second Circuit's stated reasons for departing from the Fifth are persuasive on their own, there are three additional reasons to adopt the Second Circuit's approach. First, though the Ninth Circuit has not weighed in on the split, every Ninth Circuit case that Mr. Sriptech is aware of discussing *Liu* since the NDAA became law has done so under the belief that *Liu* is still good law and has discussed disgorgement in SEC enforcement actions as an equitable (not civil) remedy. *See, e.g.*, *SEC v. Liu*, No. 21-56090, 2022 WL 3645063, at *2 (9th Cir. Aug. 24, 2022) (favorably citing *Liu* and characterizing "disgorgement as an equitable remedy"); *SEC v. Cole*, No. 17-56196, 2024 WL 445335, at *2 (9th Cir. Feb. 6, 2024) (discussing disgorgement as an equitable remedy and vacating and remanding a disgorgement order to ensure that the amount awarded and its distribution is in accordance with *Liu*.)

Second, deference is due to the Second Circuit in securities litigation, given its widely recognized expertise in the subject matter. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 276 (2010) (Breyer, J., concurring) (referring to the Second Circuit as the "Mother Court of securities law"); *Cont'l Grain (Australia)*

18

*Pty. Ltd. v. Pac. Oilseeds, Inc.*, 592 F.2d 409, 413 (8th Cir. 1979) (same); *SEC v. Kasser*, 548 F.2d 109, 115 (3d Cir. 1977) (Second Circuit has "especial expertise in matters pertaining to securities.").

Third, the language in the NDAA that became subsection (d)(7) to 15 U.S.C. § 78u was written *before* the Supreme Court decided *Liu*. The Fifth Circuit's decision in *Hallam* is expressly premised on the false understanding that Congress passed the NDAA to respond to *Liu*. *Hallam*, 42 F.4th at 338. In fact, subsection (d)(7) was written to clarify what was an open question at the time of its writing: that disgorgement is an equitable remedy available in SEC enforcement actions. As a result, equitable principles requiring that disgorgement be used to compensate victims for financial losses, as explained in *Liu*, continue to govern.

Legislative history tells the tale. In 2017, the Supreme Court questioned whether disgorgement was a permissible remedy in SEC enforcement actions. *Kokesh v. SEC.*, 581 U.S. 455, 461 n.3 (2017). In 2019, Senator Mark Warner introduced S. 799 "to clarify that the [SEC] may seek disgorgement and restitution as a result of a violation of the securities laws," among other reasons. Securities Fraud Enforcement and Investor Compensation Act of 2019, S.799, 116th Cong. (2019), *available at* https://bit.ly/3SSychE. Section 2(a)(3) of that bill proposed adding a subsection (d)(7) to 15 U.S.C. § 78u. This proposed amendment

19

contained remarkably similar language to what the NDAA added as 15 U.S.C. § 78u(d)(7) in 2021:

| S.799 Language | Language Enacted with NDAA |
|---|---|
| In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement of any unjust enrichment that a person obtained as a result of a violation of that provision. | In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement. |

The similarity is no coincidence. After its introduction, S.799 was then folded into section 502 of S.2563, the ILLICIT CASH Act, a bill that Sen. Warner introduced later in 2019. Section 502 of the ILLICIT CASH Act appears to be identical to much if not all of S.799, and it has the same above-quoted language about disgorgement. ILLICIT CASH Act, S. 2563, 116th Cong. (2019), *available at* https://bit.ly/49RmVon.

Then, in 2020, after the House and Senate passed different versions of the NDAA (and after *Liu*), a conference committee proposed a version of the bill that would eventually become law. *See Actions Overview: H.R.6395 — 116th Congress*

*(2019-2020)*, *available at* https://bit.ly/3SQTagN. The conference committee noted

its version included several other pieces of then-pending legislation including the

ILLICIT CASH Act. H.R. Rep. No. 116-617, at 2137, *available at*

https://bit.ly/49qO95N. The conference committee's version amended 15 U.S.C. §

78u to add subsection (d)(7) in the language that it has today. *Id.* at 1267; *see also*

CONG. RSCH. SERV., R47255, The Financial Crimes Enforcement Network

(FinCEN): ANTIMONEY LAUNDERING ACT OF 2020 IMPLEMENTATION

AND BEYOND, at 3–4 n.18 (2022), *available at* bit.ly/3UYfR5h (explaining that

the Conference Committee included the ILLICIT CASH Act within the NDAA).

As such, while 15 U.S.C. § 78u(d)(7) was enacted after *Liu*, its language

***predates that decision***. Tracing the language to its legislative origins shows that it

was responding to a Supreme Court case that questioned *whether the SEC could*

*even obtain disgorgement* (*Kokesh*), not a Supreme Court case that did not exist at

the time (*Liu*).

As such, the Court should follow the rationale of *Liu* and the Second

Circuit's interpretation of disgorgement requirements.

### E. The SEC Is Required To Prove Investors Were *Financially* Harmed, Which It Did Not Do Here.

Building on *Ahmed* and *Liu*, last year the Second Circuit held that

disgorgement under both 15 U.S. § 78u(d)(5) and (d)(7) requires a finding that

21

victims suffered pecuniary harm. *Govil*, 86 F.4th at 103–04. Since disgorgement is "an equitable remedy" focused on "'returning the funds to victims,'" the Second Circuit explained, it "presupposes pecuniary harm" because funds "cannot be returned if there was no deprivation in the first place." *Id.* at 103 (quoting *Liu*, 591 U.S. at 88). In reaching its decision, the Second Circuit relied upon *Liu's* characterization of an equitable remedy as one that "restores the status quo." *Id.* It reasoned that far from returning to the status quo, an award beyond proved financial harm would actually be a "windfall." *Id.* It also explained that financial harm cannot be presumed; it must be proved. *Id.* at 104 n.16.

Govil is hardly noteworthy. It explicitly recognized what was implicit from *Liu*: if disgorgement is about returning funds to the victim, as *Liu* indicates, 591 U.S. at 74 and 88, then the SEC must prove financial harm. As outlined at the start of part III of the argument section of this brief, the SEC did not prove financial harm to the District Court. Rather, the District Court presumed such harm, which it cannot do. The District Court's decision is, therefore, wrong.

## IV. CONCLUSION

For these reasons above, the District Court erred when it ordered disgorgement against Mr. Sripetch as the SEC has failed to meet its burden to show pecuniary harm. This Court should reverse the District Court.

Dated:  October 9, 2024                    Respectfully submitted,

                                         /s/ *Gregory T. Nolan*

                                         KENNETH P. WHITE
                                         TYLER R. CREEKMORE
                                         GREGORY T. NOLAN
                                         Brown White & Osborn LLP
                                         333 S. Hope St., 40th Floor
                                         Los Angeles, CA 90071
                                         kwhite@brownwhitelaw.com
                                       tcreekmore@brownwhitelaw.com
                                       gnolan@brownwhitelaw.com
                                       Attorney for Appellant

23

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that Defendant-Appellant

Ongkaruck Sripetch's Opening Brief is proportionately spaced, in typeface of 14

points or more and contains 4,637 words, excluding parts of the Brief exempted by

Fed.R.App.P. 32(a)(7)(B)(iii).

Dated:  October 9, 2024

Respectfully submitted,

<u>/s/ *Gregory T. Nolan*</u>

KENNETH P. WHITE
TYLER R. CREEKMORE
GREGORY T. NOLAN
Brown White & Osborn LLP
333 S. Hope St., 40th Floor
Los Angeles, CA 90071
kwhite@brownwhitelaw.com
tcreekmore@brownwhitelaw.com
gnolan@brownwhitelaw.com
Attorney for Appellant

## **STATEMENT OF RELATED CASES**

No other cases in this Court are deemed related to this case pursuant to

Circuit Rule 28-2.6.

Dated: October 9, 2024 /s/    *Gregory T. Nolan*

KENNETH P. WHITE
TYLER R. CREEKMORE
GREGORY T. NOLAN
Brown White & Osborn LLP
333 S. Hope St., 40th Floor
Los Angeles, CA 90071
kwhite@brownwhitelaw.com
tcreekmore@brownwhitelaw.com
gnolan@brownwhitelaw.com
Attorney for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 9, 2024.

Dated: October 9, 2024 /s/ *Gregory T. Nolan*

KENNETH P. WHITE
TYLER R. CREEKMORE
GREGORY T. NOLAN
Brown White & Osborn LLP
333 S. Hope St., 40th Floor
Los Angeles, CA 90071
kwhite@brownwhitelaw.com
tcreekmore@brownwhitelaw.com
gnolan@brownwhitelaw.com
Attorney for Appellant

26